## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## AT ELKINS

**BARRY CONATY,**

> **Plaintiff,**

> **v.**                                                    **Civil Action No.: 2:11-CV-14**

**RENEE M. LOHMAN, THE LOHMAN GROUP, INC.,**
**MATTHEW D. LEVY, M.D.,**
**JEFFREY A. McCANDLESS,**
**WILLIAM B. SHEFFEL,  THOMAS C. BUTLER,**
**ACUMEN ACCOUNTING, INC.,**
**BUTLER CONSULTING GROUP, INC., RAVIH B. MASIH, M.D.**
**MOUNTAIN MEDICAL, INC., MOUNTAIN MEDICAL PC, PLLC,**
**CALVERT & COMPANY, P.C., and**
**URGENT CARE AMERICA (DEL), LLC**
**D/B/A URGENT CARE AMERICA, LLC**

> **Defendants.**

## COMPLAINT

Plaintiff Barry Conaty, by and through his undersigned counsel, William E. Ford III,

hereby sets forth his Complaint as follows:

## PARTIES

1.      Plaintiff Barry Conaty ("Plaintiff Conaty") is an individual residing at 2125 14th Street,

NW, Apt. 808, in Washington, DC 20009.  Plaintiff Conaty also maintains a residence at 700

Rocky Branch Road, Baker, WV 26801.

2.      Defendant Renee M. Lohman ("Defendant Lohman") is an individual residing at 1225

Martha Custis Drive, Apt. 1219, Alexandria, VA  22302.  Ms. Lohman also maintains a

residence at 4015 Lower Cove Run, Mathias, WV 26812.

3.      Defendant The Lohman Group, Inc. ("Defendant TLG") is a corporation incorporated in

Virginia.  The principal place of business for TLG is 122 E. Broad Street, #122A, Falls Church, VA  22046.

4.      Defendant Matthew D. Levy, M.D. ("Defendant Levy") is an individual residing at 231 14th Street, NE, in Washington, DC  20002.  Defendant Levy is a medical doctor licensed in several jurisdictions including the West Virginia Board of Medicine ("WV BOM") and the Health Professional Licensing Administration of the District of Columbia ("DC HPLA"). Defendant Levy is Board-Certified in Pediatrics according to the DC HPLA.  The WV BOM lists Defendant Levy's primary work location as 747 North Main Street, Suite C, Moorefield, WV 26836.  The DC HPLA lists Defendant Levy's business address as Georgetown University Hospital, 3800 Reservoir Rd., N.W., Washington, D.C. 20007

5.      Defendant Jeffrey A. McCandless ("Defendant McCandless") is an individual residing at 1509 Van Buren Street, NW, Washington, DC  20012.

6.      Defendant Ravih B. Masih, M.D. ("Defendant Masih"), is a medical doctor licensed by the WV BOM and resides at 52 Riverview Drive, Petersburg, WV 26847.   The WV BOM lists Dr. Masih's primary work location as 747 North Main Street, Suite C, Moorefield, WV  26836.

7.      Defendant Thomas Butler ("Defendant Butler") is an individual residing at 47013 Kentwell Place, Sterling, VA 20165, who, for all periods and purposes relevant to this Complaint held himself out as a professional engaged in the business of bookkeeping for, and providing tax advice to, small businesses.

8.      Defendant Acumen Accounting, Inc. ("Acumen") is a corporation incorporated in Virginia.  The principal place of business for Acumen is 47013 Kentwell Place, Suite 100, Sterling, VA 20165. Upon information and belief, Defendant Acumen is owned by and is an

2

alter-ego of Defendant Butler.

9.      Defendant Butler Consulting Group, Inc. ("Butler Consulting") is a corporation incorporated in Virginia.  The principal place of business for Butler Consulting is 19440 Golf Vista Plaza, Suite 240, Leesburg, VA 20176. Upon information and belief, Defendant Butler Consulting is or was owned and/or controlled by and is or was an alter-ego of Defendant Butler for the periods and purposes relevant to this Complaint.

10.      Defendant William B. Sheffel ("Defendant Sheffel") is an individual residing at 8110 Haddington Court, Fairfax Station VA 22039.

11.      Defendant Mountain Medical, Inc. ("MMI") is a West Virginia for profit corporation formed by Defendant Lohman on or about May 18, 2006.  The Articles of Incorporation for MMI authorized the issuance of 2,800 shares in MMI at a par value of $140/share.  The business legal purpose of MMI stated in the original Articles of Incorporation "is to expand access to medical and other health care services within a physician practice model within Hardy County."

12.      Defendant Mountain Medical PC, PLLC ("MMPCPLLC") is a West Virginia for profit professional limited liability company formed by Defendant Levy as its sole member on or about January 29, 2007. Upon information and belief, the Operating Agreement for Defendant MMPCPLLC subsequently was amended in 2007 to admit Defendant Masih as a Member owning 48 of the 100 membership Units in MMPCPLLC, with Defendant Levy thereupon owning a majority 52 of the 100 membership Units.  Upon information and belief, Defendant MMPCPLLC is owned by and is an alter-ego of Defendants Levy and Masih.

13.      Defendant Calvert & Company P.C. ("Calvert") is a professional corporation incorporated in Virginia.  The principal place of business for Calvert is 8629 Mathis Avenue

3

Manassas, VA 20110.

14.     Defendant Urgent Care America (DEL), LLC d/b/a Urgent Care America, LLC ("UCA") is a Delaware Limited Liability Company.  The registered principal address for UCA is 17595 S. Tamiami Trail, Suite 106, Ft. Myers, FL  33908.  A press release published by UCA indicated that TLG merged into UCA on or about April 2009 and UCA's development office subsequently was operated from the TLG business address.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a), and Sections 21(d), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange"), 15 U.S. C. §§ 78u(d), 78u(e) and 78aa.

16.     This Court has personal jurisdiction over the Defendants and venue is proper in the Northern District of West Virginia because many of the Defendants' act and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Northern District of West Virginia. In addition, the principal offices of Defendants MMI and MMPCPLLC during the relevant period was in, and remains in, the Northern District of West Virginia.

17.     Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business and conduct set forth in this Complaint.

## INTRODUCTION

18.     In or about 2006 and 2007 the Plaintiff and other investors were offered by Defendant

Lohman and Defendant Levy the opportunity to purchase shares of common stock in MMI to

provide a physician-based extended hours center for medical services and primary care physician

services to the residents of Hardy County and surrounding areas. Defendants Lohman, Levy and

Sheffel were the Founders of MMI.  Defendant McCandless was appointed as a member of

MMI's Board of Directors at MMI's organizational meeting convened on or about June 1, 2006.

In order to raise capital for this venture through the offer and sale of the common stock of MMI

to Plaintiff Conaty and others, Defendants engaged in a scheme and course of conduct of

fraudulent misrepresentations and omissions of material fact, including, but not limited to, (a) the

legality of the proposed operations relative to West Virginia law concerning the corporate

practice of medicine, and failing to disclose the misrepresentations made by Defendants to the

West Virginia Health Care Authority in order to avoid further regulatory scrutiny; (b) providing

unrealistic and baseless projections for  potential revenue and rates of return on investment; ©

misrepresenting Defendants' experience and abilities to organize, operate or otherwise manage a

health care clinic;  d) misrepresenting Defendants' intention and  ability to obtain "Rural Health

Clinic" ("RHC") designation pursuant to federal law which, according to the Defendants would

result in substantially enhanced Medicare and Medicaid reimbursement to MMI;.   (e) failing to

disclose the true amount of investment funds to be used to pay consulting and management fees

to the Defendants; (f) failing to disclose shares of common stock to be transferred to insiders

thereby substantially diluting the value of stock sold to Plaintiff and other investors; and (g)

failing to disclose the embezzlement and gross mismanagement by Defendant Lohman.

## THE FRAUDULENT SCHEME

19.     Defendant Lohman, for all periods and purposes relevant to this Complaint, publicly

advertised and otherwise repeatedly held herself out as a "national" professional health care

consultant with over 20 years experience in health care finance, operations, training, education,

sales and marketing, business development, public health policy, and managed health care.

Defendant Lohman also specifically touted her expertise in securing Rural Health Clinic

("RHC") and Federally Qualified Health Center ("FQHC") designations for health care clinics.

20.     Upon information and belief, from at least in or about July/August 2005 Defendants

Lohman and TLG began to meet with citizens and political and business leaders of Hardy

County, West Virginia to explore ways to improve health care in Hardy County and explore

possible sources of funding for the same.

21.     Upon information and belief, from as early as February 2006, Defendants Lohman, TLG,

Sheffel, McCandless and Levy were engaged in a common business enterprise to form and

operate an urgent care center in Hardy County and to raise capital for the enterprise through the

sale of common stock to investors.

22.     Upon information and belief, by April 2006,  Defendants Lohman, TLG, Sheffel,

McCandless and Levy had commenced a plan to, among other things:  (a) form and operate an

urgent care center in Hardy County; (b) form Mountain Medical, Inc. as an "S Corporation" as

the ownership and operational entity; ( c) raise money from investors through the sale of

securities pursuant to a private placement document and other agreements; and ( d) avoid any

path that would require a Certificate of Need, presumably from the West Virginia Health Care

Authority.

6

23.     Effective on or about May 18, 2006, Defendant Lohman, who is not a licensed physician, formed Mountain Medical, Inc. ("MMI") as a West Virginia for profit, domestic corporation. The Articles of Incorporation for MMI authorized the issuance of 2,800 shares in MMI at a par value of $140/share.  The business legal purpose of MMI stated in the Articles of Incorporation "is to expand access to medical and other health care services within a physician practice model within Hardy County."

24.     On or about July 3, 2006, Defendant Lohman and Defendant McCandless in person presented an offer to purchase shares in MMI in a private offering of 2,800 shares at $140/share to a group of invited potential investors including Plaintiff Conaty.  During the presentation, Defendant Lohman and Defendant McCandless provided Plaintiff and other prospective investors with a document package which included a printed PowerPoint presentation, including attached financial pro formas, a Private Placement Memorandum, a Subscription Agreement, and a Common Stock Investors' Rights Agreement" (collectively, the "Marketing Materials").   The same Private Placement Memorandum, Subscription Agreement, Common Stock Investors' Rights Agreement and financial pro formas previously had been transmitted electronically to Plaintiff Conaty on or about June 7, 2006.

25.     The Marketing Materials denominated Defendant Lohman, Defendant Levy and Defendant Sheffel collectively as the Founders of MMI.

26.     The Marketing Materials contained numerous significant false or misleading factual assertions as well as numerous omissions of significant material facts at the time the Marketing Materials were first presented to Plaintiff Conaty and at the times of each of his subsequent purchases of stock in MMI,  including:

a.      That William Sheffel, an adjunct professor of pharmacy with over twenty-five (25) years of experience in health and human services operations, strategic planning, business development and finance, would serve as MMI's Executive Vice President, Treasurer and Secretary and was a member of MMI's Board of Directors.  The Marketing Materials stated that MMI's "success depends substantially on ... relationships with strategic partners, such as ... William Sheffel ... for operational expertise and support of the Physician Practice with extended service hours.  If we are unable to maintain our relationship with [this] ... individual[], our business, prospects, financial condition and results of operations will be materially adversely affected." (emphasis supplied).  These representations were false as, unknown to Plaintiff Conaty and other prospective investors in 2006 and 2007,  Defendant Sheffel had in fact withdrawn from being a Founder shareholder, director and officer in MMI and instead acted as an undisclosed consultant to MMI in which capacity he has represented publicly that from March 2006 through May 2007 he "Developed Strategy for Urgent Care Start-up, including Corporate Formation, Stark compliance, Financial Modeling & Funding."   Despite Defendant Sheffel's knowledge of the false statements contained within the Marketing Materials, including the planned extent of his involvement with MMI, as therein described, Defendant Sheffel never corrected or informed Plaintiff Conaty and other prospective investors of his withdrawal from ownership and management of MMI.

b.      That Defendant Sheffel held 2,600 of the issued and outstanding shares of MMI, which represented beneficial ownership of 41.9% of MMI before the private placement sale of 2,800 shares and would represent 31.3% ownership upon the conclusion of the

private placement sale.  In fact, Defendant Lohman and Defendant Levy took ownership

of Defendant Sheffel's shares without timely disclosure of this fact to Plaintiff and other

prospective investors. and without compliance with provisions of the Common Stock

Investors' Rights Agreement governing the transfer of Founder stock.

c.      That MMI's Articles of Incorporation authorized the issuance of 10,000 shares in

MMI.  In fact, MMI's Articles of Incorporation filed with the West Virginia Secretary of

State authorized the issuance solely of the 2,800 shares contemplated to be sold to

investors.

d.      That MMI was formed as an "S Corporation" when in fact it was not. Filing with

the U.S. Internal Revenue Service for Subchapter S designation was not accomplished

until 2008 and such filing was made in contravention of legal requirements..

e.      That MMI would enjoy favorable pricing for comprehensive consulting services

to be provided during the start-up and operation of MMI by The Lohman Group pursuant

to a Consulting Agreement ("TLG Consulting Agreement") included with the Marketing

Materials as an appendix to the Private Placement Memorandum, which representation

turned out to be false.

f.      For a monthly fixed fee, among other comprehensive services to be provided by

TLG to MMI was securing designation as a Rural Health Clinic ("RHC") and providing

"all of the billing" for MMI using appropriately qualified TLG employees. These services

were critical to the profitability of MMI.  In fact,  TLG did not have the ability to provide

such services described within the TLG Consulting Agreement as MMI in fact did not

qualify for designation as a RHC under federal or West Virginia law.  Further, upon

information and belief, shortly after the effective date of the TLG Consulting Agreement term, and while the Founders of MMI continued soliciting investors Defendant Lohman began to effect the periodic transmittal of monies from MMI to TLG substantially in excess of the monthly fixed fee arrangement prescribed in the agreement. Further, upon information and belief, at some point after Defendant Lohman transferred primary responsibility for MMI's banking activities to Defendant McCandless on or about January 29, 2007, Defendant Lohman and/or Defendant TLG manufactured fraudulent *ex post facto* invoices to cover certain of the payments Defendant Lohman had effected from MMI to TLG prior to January 29, 2007.

g.      That MMI had entered into a Consulting Agreement with Defendant Levy as attached as an exhibit to the Private Placement Memorandum included in the Marketing Materials.  The Marketing Materials asserted that Defendant Levy's agreement "calls for exchange of services as a Medical Director for 2,000 shares of Common Stock that vest equally in annual installments over a five (5) year period."  In fact, Defendant Levy has asserted to MMI shareholders that he never signed the Consulting Agreement appended to the Private Placement Memorandum and Defendant Levy claimed to be fully vested in 2,000 shares notwithstanding language to the contrary set forth in the Marketing Materials.

h.      That the financial projections, which conservatively forecasted just over one and a half million dollars in revenue in the first year of operations, failed to disclose that Defendants Lohman and Levy had agreed to pay doctors Rajan Masih and Ravi Masih each a salary of $420,000 annually, which amount grossly exceeded any reasonable

prevailing "market" salary in the Grant County and Hardy County area for medical doctors providing similar services.  Further, the salaries rendered the financial projections and forecasts made in the Private Placement Memorandum materially misleading.

I.      That the Marketing Materials nowhere contemplated that the physicians to be hired by MMI each would be fully vested upon their employment with 5% of the "post-equity raise capitalization of MMI," thus causing a substantial and material dilution in the ownership of the paid investors in the MMI enterprise.

j.      That MMI would engage in the profligate processes of leveraging itself by issuing or proposing to issue shares not disclosed in the Marketing Materials so as to accomplish the immediate goals of its Founders and insiders without any consideration of the affect of the dilution of share values for passive paid investors such as Plaintiff Conaty.

k.      That MMI had adopted basic corporate governance documents such as Bylaws when it had not.

l.      That the consummation of the transactions contemplated by the Subscription Agreement would not violate any federal or state law, rule or regulation applicable to MMI when, in fact, the practice of medicine by a corporation that is not exclusively owned by West Virginia-licensed physicians and formed in accordance with West Virginia laws, without approval by West Virginia regulatory authorities including the West Virginia Health Care Authority was, and is, forbidden by West Virginia law.

m.      That MMI was not aware of any officers or key employees that intended to terminate their relationship with MMI when, in fact, Ms. Brooke Baumann, listed as a member of the MMI Board of Directors in the Private Placement Memorandum, had

11

never agreed to become a member of the Board of Directors and Defendant Sheffel had stepped down from his positions.

n.      That MMI had "obtained and maintain[ed] in full force and effect all permits, licenses, consents, approvals, registrations, memberships, authorizations and qualifications under all applicable laws, and with all applicable authorities, required for the conduct of its business…" when, in reality, MMI could never obtain the necessary permits, licenses, consents, approvals, registrations, authorizations and qualifications to operate as it contemplated and promised because it intended to sell, and did in fact sell, shares to numerous non-physician investors including Plaintiff Conaty.

o.      That the Subscription Agreement and "[a]ll other documents delivered by [MMI] to the Investors or the Investors' attorneys or agents… collectively and taken as a whole… do not contain any untrue statement of material fact… nor omit any statement of material fact necessary in order to make the statements contained herein or therein in light of the circumstances under which such omission was made, not misleading." *Id.* at 8-9. In reality, the Marketing Materials, including  the Subscription Agreement, were rife with misstatements, impossible promises of a business that could never operate legally and omissions of critical facts.

27.      Additionally, Defendant Lohman, Defendant McCandless and Defendant Levy repeatedly made misleading and factually inaccurate verbal assurances to Plaintiff Conaty and other prospective investors, including:

a.      Knowingly reaffirming statements contained within the Marketing Materials which they knew to be false; and,

12

      b.      Knowingly misrepresenting their expertise in virtually all respects relevant to the formation and operation of the enterprise contemplated in the Marketing Materials including consulting expertise and abilities, and MMI's ability to obtain enhanced Medicare and Medicaid reimbursements allowable under federal and state law for designated Rural Health Clinics,  urgent care clinic administration abilities and billing/collection abilities.

28.    In reliance upon the representations contained within the Marketing Materials and the many misrepresentations and promises of Defendants Lohman,  Levy and McCandless, Plaintiff Conaty purchased 1,215 shares of MMI in four tranches and made a loan to Defendants MMI and MMPCPLLC, as follows:

      a.      500 shares on or about July 14, 2006, at a cost of $70,000;

      b.      215 shares on or about October 18, 2006, at a cost of $30,100;

      c.      250 shares on or about February 27, 2007, at a cost of $35,000;

      d.      250 shares on or about July 3, 2007, at a cost of $35,000; and,

      e.      loan of $ 50,000.00 made on or about October 2009.

29.    Plaintiff Conaty purchased the MMI shares in each instance in reliance on the Marketing Materials.

30.    During the period over which Plaintiff Conaty purchased his shares, the Board of Directors of MMI rapidly and drastically departed from the business model set forth in the Marketing Materials.  Upon information and belief, at no time were the Marketing Materials updated and distributed to then paid shareholders such as Plaintiff Conaty and other potential investors despite written subsequent representations to the contrary made by Defendant Lohman

13

in Novem0ber 2008.  At no time were Plaintiff Conaty and the other investors apprised of these radical departures from the business model nor were they ever provided an opportunity to change their investment decisions.

31,     Not a single significant business feature described in the Marketing Materials survived and Plaintiff Conaty has suffered direct investment losses of $200,100.00.

32.     Contrary to the representations made by the Defendants to Plaintiff Conaty and other investors, MMI did not operate an urgent care facility and, never provided any medical services.

33.     MMI did not become designated under federal and West Virginia law as a Rural Health Clinic; indeed application for such was never made despite repeated representations by Defendant Lohman and TLG to the contrary.

34.     MMI did not use TLG to meet its key staffing and administrative requirements as required by the TLG Consulting Agreement.

35.     MMI did not preserve its capital but instead channeled it to an entity, MMPCPLLC, in which Plaintiff Conaty had no ownership interest and in return for which MMI and Plaintiff Conaty received nothing of value.

36.     Brooke Baumann never served as a member of the MMI Board of Directors and Defendant Sheffel purportedly withdrew from the Board of Directors and as an officer of MMI prior to Plaintiff Conaty's initial investment in MMI.  Unknown to the shareholders, Defendant Sheffel instead purportedly became a consultant to MMI.  Despite Defendant Sheffel's knowledge of the false statements contained within the Marketing Materials, including the described extent of his critical involvement with MMI, as well as his knowledge that the Marketing Materials were intended for the solicitation of investors in MMI,  Defendant Sheffel

14

never corrected the Marketing Materials, never instructed Defendants Lohman, Levy and McCandless to cease and desist in the distribution of false and misleading Marketing Materials, and never otherwise informed Plaintiff Conaty and other passive paid shareholders of his withdrawal from ownership of MMI and election to become an undisclosed consultant to MMI.

37.     On or about October 25, 2006 the West Virginia Health Care Authority initiated a formal inquiry to determine whether there had been a violation of the West Virginia Certificate of Need law and the West Virginia corporate practice of medicine law by requesting certain information from MMI and its President/CEO, Defendant Lohman.

38.     Throughout her communications with the West Virginia Health Care Authority, Defendant Lohman failed to inform the Authority that she, a non-physician, was the largest shareholder of MMI and that MMI had over thirty (30) non-physician shareholders.

39.     On or about November 29, 2006, MMI and Defendant Lohman responded to the West Virginia Health Care Authority by letter and other documents, including a letter from Lori Owen Smetanka, Esq., counsel for Defendant MMI,  which, contrary to the representations being made to Plaintiff Conaty and other prospective investors at the same approximate time period, and which representations are now known by Plaintiff to be false,  represented that :

    a.      Defendant Levy was the owner/physician of Defendant MMI, without disclosing that there were over thirty (30) other non-physician shareholders of MMI;

    b.      that Defendant MMI was organized as Private Office Practice of Health Professionals pursuant to Chapter 30 of the W.Va. Code when in fact it was not;

15

  c.  Defendant MMI was organized as the private office practice of health

professionals when if such were the fact, there could be no non-physician shareholders

pursuant to West Virginia law;

  d.  Defendant Masih and his brother Dr. Rajan Masih were employed by MMI and

each owned five per cent (5%) of Defendant MMI when neither such factual

representation was correct; and,

  e.  MMI met the criteria of Private Office Practice of Health Professionals as defined

under Chapter 30 of the W. Va. Code and the West Virginia Certificate of Need

Standards, and as such, Defendant MMI was exempt from Certificate of Need review;

40.  By letter dated December 21, 2006, the West Virginia Health Care Authority issued a

letter to Defendant MMI asking whether non-physicians would be allowed to become

shareholders of Defendant MMI and on February 20, 2007 a second request for the same

information was made by the West Virginia Health Care Authority.

41.  On or about March 14, 2007, Defendant MMI, through counsel, in correspondence setting

forth factual representations that had been verified under oath by Defendants Lohman and Levy,

represented to the West Virginia Health Care Authority, among other things, that:

  a.  Defendant MMI was not a West Virginia medical practice, nor was it an investor

in any West Virginia medical practice

  b.  Defendant MMPLLC was solely owned by Defendant Levy and that Defendant

MMPLLC would conduct its medical practice of medicine and surgery through Defendant

Levy and other licensed contracted physicians; and,

16

c.      Defendant MMI would (1) build office space to lease to Defendant MMPLLC, (2) lease to Defendant MMPLLC office equipment, and, (3) provide financing and certain management and administrative services to Defendant MMPLLC.

42.     The representations made in the preceding paragraph by Defendants MMI, MMPLLC, Lohman and Levy to the West Virginia Health Care Authority were false and misleading given that in fact (a) there were in place no governing agreements setting forth the relationship between MMI and MMPCPLLC until a management agreement was hastily prepared and adopted in April 2009; and (b) the management agreement which was executed in April 2009 called for MMI to receive one hundred per cent (100 %) of all revenue generated by Defendant MMPCPLLC and for Defendant MMI to be responsible for all expenses of operating Defendant MMPCPLLC.

43.     The representations referenced in ¶ 36 above by Defendants MMI, MMPCPLLC, Lohman and Levy to the West Virginia Health Care Authority were diametrically contrary to the representations made by the Defendants to Plaintiff Conaty and other prospective investors.

44.     The representations referenced in ¶ 36 above by Defendants MMI, MMPLLC, Lohman and Levy to the West Virginia Health Care Authority were never disclosed to Plaintiff Conaty by any of the Defendants, and if made known to Plaintiff Conaty prior to his decisions to invest in Defendant MMI, would have completely altered his decisions to invest in Defendant MMI.

45.     From at least as early as in or about April 2006, Defendants Lohman, Levy and McCandless were on notice of issues raised by the proposed operations relative to West Virginia law concerning the corporate practice of medicine and that the corporation as contemplated could possibly be required to obtain a Certificate of Need from the West Virginia Health Care Authority, pursuant to West  Virginia law.

17

46.     From at least as early as in or about April 2006, Defendants Lohman, Levy and McCandless also knew that they would likely not be successful in obtaining a Certificate of Need as they were already on notice that an application for a Certificate of Need could expect substantial, and probably fatal, objection from the public and certain local political leaders and business entities.

47.     Defendants Lohman, Levy, and McCandless failed to disclose to Plaintiff Conaty that they caused to be filed with the West Virginia Secretary of State on or about March 6, 2007 amended Articles of Incorporation ("Amended Articles") for Defendant MMI which wholly restated the business purpose of MMI "to provide professional and consulting services," contrary to express representations set forth in the Marketing Materials.  The Amended Articles also added numerous provisions never noticed to the investors, including provisions governing indemnification of directors and officers, disavowing shareholder preemptive rights and cumulative voting rights, and increasing the number of authorized shares to be issued from 2,800 to 100,000. Further, the filing violated the West Virginia Business Corporation Act, W.Va. Code § 31D-10-1003, which required prior shareholder notice and approval of such amended Articles.

48.     The changes made by Defendants Lohman, Levy and McCandless to the purpose and structure of Defendant MMI so transformed Defendant MMI as to render it devoid of any meaningful business purpose. Nonetheless,  Defendants Lohman, Levy and McCandless continued to solicit investors in reliance on the original Marketing Materials and other communications from the individual Defendants without revision, correction or explanation.

18

49.     The deliberate, unjust and illegal mutation of Defendant MMI destroyed the path through which Plaintiff Conaty and the other investors were to receive a return on their investments made in reliance upon the Marketing Materials.

## COUNT I – <u>BREACH OF FIDUCIARY DUTY</u>

(DEFENDANTS RENEE M. LOHMAN,  MATTHEW D. LEVY, JEFFREY A. McCANDLESS, WILLIAM B. SHEFFEL, RAVI B. MASIH, THOMAS C. BUTLER, ACUMEN, AND BUTLER CONSULTING)

50.     The preceding paragraphs are incorporated by reference.

51..    Defendants Levy, Lohman, Masih and McCandless were each a member of the Board of Directors of MMI, and as such, they each owed a fiduciary duty to Plaintiff Conaty as a shareholder of MMI.

52.     Defendant Butler, Acumen and Butler Consulting prepared and disseminated accounting, financial and other information about MMI and MMPCPLLC to Plaintiff Conaty and other investors through presentations, email communications and printed materials.

53.     Defendants Levy, Lohman, and McCandless owed a fiduciary duty to Plaintiff Conaty as solicitors for investments in MMI.

54.     Defendants Butler, Acumen and Butler Consulting each owed a fiduciary duty as a provider of accounting and financial services upon which Plaintiff Conaty made equity and debt investment decisions.

55.     Upon information and belief, Defendants Butler, Acumen and Butler Consulting had been associated with and had provided accounting services to Defendants Lohman and/or TLG, prior to his association with Defendants MMI and MMPCPLLC.

56.     Because of his association with and knowledge of the financial affairs of Defendants Lohman and TLG, Defendant Butler was in an especially unique position to have known, or if he did not know, he should have known, of many of the materially false representations and omissions of material fact previously made to Plaintiff Conaty and other investors by the other Defendants regarding, among other things:

    a.      the existence of MMPCPLLC and the reasons therefor;

    b.      the nature of the  management agreement and accounting relationship between MMI and MMPCPLLC, and the reasons therefor; and,

    c.      the misuse and misappropriation of investor funds by Defendants Lohman and TLG as well as the unreasonable and excessive compensation Defendant Lohman caused to be paid to herself and Defendant TLG.

57.     Defendants Levy, Lohman, McCandless, Masih, Butler, Acumen and Butler Consulting breached their fiduciary duties by taking actions harmful to the pecuniary interests of the MMI shareholders.

58.     Defendants Levy, Lohman, McCandless, Masih, Butler, Acumen and Butler Consulting breached their fiduciary duties by misleading the shareholders with inaccurate financial data and lulling investors into believing their investments in MMI were safe, such conduct being designed to induce inaction by the investors.

59.     Defendant Levy's, Lohman's, McCandless's, Masih's, Butler's, Acumen's and Butler Consulting's respective and collective  abdication of their fiduciary duties to Plaintiff Conaty resulted in substantial pecuniary harm to Plaintiff Conaty including but not limited to the loss of his investment and legal fees incurred in his attempts to recover that investment.

60.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendants Levy, Lohman, McCandless, Masih, Butler, Acumen  and Butler Consulting, jointly and severally,  together with pre and post-judgment interest.


## COUNT II – <u>COMMON LAW FRAUD</u>

**(RENEE M. LOHMAN, THE LOHMAN GROUP, MATTHEW D. LEVY, RAVI B. MASIH, JEFFREY A. McCANDLESS, ACUMEN, WILLIAM B. SHEFFEL, THOMAS C. BUTLER AND BUTLER CONSULTING)**

61.     The preceding paragraphs are incorporated by reference.

62.     Defendants Levy, Lohman, the Lohman Group, McCandless, Acumen,  Sheffel, Masih, Butler and Butler Consulting intentionally or recklessly engaged in a course of fraudulent acts including misrepresentations and omitting to state material facts, respectively regarding or by:

  a.     the purported legality of the proposed operations relative to West Virginia law regarding the corporate practice of medicine, and by failing to disclose the misrepresentations made by Defendants to the West Virginia Health Care Authority in order to avoid further regulatory scrutiny;

  b.     providing unrealistic and baseless projections for  potential revenue and rates of return on investment;

    c.    misrepresenting Defendants' experience and abilities to organize and manage a health care clinic;

    d.    misrepresenting Defendants' ability to secure "Rural Health Clinic" and "Federally Qualified Health Center" status pursuant to federal and state law,  and misrepresenting the eligibility of the MMI clinic to thereby receive substantially enhanced Medicare and Medicaid reimbursement;

    e.    failing to disclose the amount of investments funds to be used to pay consulting and management fees to the Defendants;

    f.    failing to disclose shares of common stock to be transferred to insiders thereby diluting the value of stock sold to Plaintiff and other investors; and

    g.    failing to disclose the misappropriation of funds by Defendant Lohman and gross mismanagement by Defendants Lohman, Levy, McCandless and Masih;

63.    Plaintiff Conaty relied upon the false representations and omissions of material fact made by Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel and Masih in making his decisions to purchase stock of Defendant MMI and to loan money to MMI. Such false representations and omissions also were intended to mislead Plaintiff Conaty and lull Plaintiff Conaty into refraining from making inquiry.

64.    As a direct and proximate result of the material false representations made by Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel and Masih to Plaintiff Conaty and omissions of material facts by Defendants, and Plaintiff's reliance upon these misrepresentations and omissions, Plaintiff has suffered direct investment losses of $220,100.00.

65.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel and Masih, MMI and MMPCPLLC, jointly and severally, together with pre and post-judgment interest.

## COUNT III – VIOLATION OF THE
## WEST VIRGINIA UNIFORM SECURITIES ACT, W. VA. CODE §§ 32-4-401, *et seq.*

(DEFENDANTS RENEE M. LOHMAN, THE LOHMAN GROUP, MATTHEW D. LEVY, RAVI B. MASIH, JEFFREY A. McCANDLESS, ACUMEN, WILLIAM B. SHEFFEL, THOMAS C. BUTLER AND BUTLER CONSULTING)

66.     The preceding paragraphs are incorporated by reference.

67.     The common stock of Defendant MMI is a security as defined by the W. Va. Uniform Securities Act, W.Va. Code §§ 32-4-409 *et seq.*

68.     Since at least in or about June 2006, Defendants have directly and indirectly, in the offer or sale of securities within the state of West Virginia been knowingly, willfully or recklessly employing devices, schemes and artifices to defraud, and have made untrue statements of a material fact and have omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and have engaged in acts, practices and courses of business which operated as a fraud and deceit upon Plaintiff Conaty.

69.     Defendants each knew of the falsity of their untrue statements of material fact.

70.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel, Masih, MMI and MMPCPLLC, jointly and severally, together with pre and post-judgment interest.

## COUNT IV - FRAUD IN VIOLATION OF
## SECTION 17(a) OF THE SECURITIES ACT OF 1933

### (DEFENDANTS RENEE M. LOHMAN, THE LOHMAN GROUP, MATTHEW D. LEVY, RAVI B. MASIH, JEFFREY A. McCANDLESS, ACUMEN, WILLIAM B. SHEFFEL, THOMAS C. BUTLER AND BUTLER CONSULTING)

71.     The preceding paragraphs are incorporated by reference.

72.     Since at least in or about June 2006, Defendants have directly and indirectly, by use and means of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities been knowingly, willfully or recklessly employing devices, schemes and artifices to defraud.

73.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel, Masih, MMI and MMPCPLLC, jointly and severally, together with pre and post-judgment interest.

## COUNT V - FRAUD IN VIOLATION OF
## SECTION 10(b) OF THE EXCHANGE ACT OF 1934 AND RULE 10b-5 THEREUNDER

### (RENEE M. LOHMAN, THE LOHMAN GROUP, MATTHEW LEVY, RAVI MASIH, JEFFREY A. McCANDLESS, ACUMEN, WILLIAM SHEFFEL, THOMAS BUTLER AND BUTLER CONSULTING)

74.     The preceding paragraphs are incorporated by reference.

75.     Since at least in or about June 2006, Defendants have directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, been knowingly, willfully, or recklessly : (a)  employing devices, schemes and artifices to defraud; (b) making untrue statements of a material facts and  omitting to state material facts necessary in order to make the statements made, in the light of the

circumstances under which they are made, not misleading; and/or ( c) engaging in acts, practices and courses of business which operated as a fraud upon Plaintiff Conaty.

76.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendants Levy, Lohman, the Lohman Group, McCandless, Sheffel and Masih, MMI and MMPCPLLC, jointly and severally, together with pre and post-judgment interest.

## COUNT VI – BREACH OF
## COMMON STOCK INVESTORS' RIGHTS AGREEMENT

### (DEFENDANTS RENEE M. LOHMAN AND
### MATTHEW D. LEVY AND WILLIAM B. SHEFFEL)

77.     The preceding paragraphs are incorporated by reference.

78.     On or about July 14, 2006, Plaintiff Conaty and MMI entered into a Common Stock Investors' Rights Agreement (the "CSIRA").

79.     Through the devices, schemes and artifices to defraud, untrue statements of a material fact and omissions of material fact by Defendants as described above, Plaintiff Conaty was induced to enter the CSIRA and the Subscription Agreement.

80.     Under the CSIRA, "Founders" such as Defendant Sheffel could not transfer shares of their "Founder Stock" except pursuant to the provisions of the Article III of the CSIRA governing the transfer of Founder Stock.

81.     Under the CSIRA, the MMI Articles of Incorporation, and West Virginia law, the MMI Board of Directors was required to follow a protocol prior to the issuance of additional shares.

25

82.    Unilaterally and without notice to either the Board of MMI or its shareholders, Defendant Sheffel, Defendant Lohman and Defendant Levy caused Defendant Sheffel's shares in MMI to be redistributed to Defendant Lohman and to Defendant Levy in certain proportions.

83.    This transfer was in breach of the CSIRA.

84.    By capriciously issuing shares that were neither authorized under the applicable Articles of Incorporation nor issued in accordance with corporate governance requirements, Defendant Sheffel, Defendant Lohman and Defendant Levy breached the CSIRA and other legal requirements.

85.    Defendants have breached their written agreements with Plaintiff Conaty and all others similarly situated by doing the wrongful acts alleged herein and have breached their duty of care of good faith and fair dealing owed to Plaintiff Conaty under West Virginia common law.

86.    Plaintiff Conaty suffered substantial pecuniary harm as a result of numerous breaches of the CSIRA by Defendant Sheffel, Defendant Lohman and Defendant Levy.  That harm included the dilution of the value of his shares and the corresponding diminution in the value of his investment.  Further, Plaintiff Conaty has incurred legal fees and costs in seeking a remedy for the damages resulting from those breaches of the CSIRA.

87.    Plaintiff Conaty is entitled to recover damages for annoyance aggravation and inconvenience and actual, compensatory and punitive damages from Defendants Lohman,  Levy, McCandless, and Sheffel, jointly and severally, together with pre and post-judgment interest.

## COUNT VII – PROFESSIONAL NEGLIGENCE

(DEFENDANTS THOMAS C. BUTLER, ACUMEN ACCOUNTING, INC. BUTLER CONSULTING GROUP, INC.)

88.     The preceding paragraphs are incorporated by reference.

89.     Defendants Butler, Acumen, and Butler Consulting, Inc. ("Accountants")  provided false information to MMI and its shareholders, in the course of their practice as professional accountants.

90.     The Accountants failed to exercise reasonable care or competence in obtaining correct and truthful information and communicating correct and truthful information to MMI and its shareholders.

91.     As a shareholder, Plaintiff Conaty was one of the intended recipient and beneficiaries of the services and information that the Accountants provided and the Accountants knew or should have known that Plaintiff Conaty would rely upon that information.

92.     Plaintiff Conaty did rely upon the information the Defendants provided and, as a result, suffered harm.

93.     Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Mr. Butler, Acumen and Butler Consulting, jointly and severally, with together with pre and post-judgment interest.

## COUNT VIII – SUCCESSOR LIABILITY FOR PROFESSIONAL NEGLIGENCE

(DEFENDANT CALVERT & COMPANY, INC.)

94.     The preceding paragraphs are incorporated by reference.

27

95.     Upon information and belief, Defendant Calvert & Company was the successor in interest to Defendant Butler Consulting.

96.     Defendant Butler Consulting provided false information, in the course of their practice as professional accountants.

97.     Defendant Consulting failed to exercise reasonable care or competence in obtaining and/or communicating that information.

98.     As a shareholder, Plaintiff Conaty was one of the intended recipients and beneficiaries of the services and information that Butler Consulting provided and Butler Consulting knew or should have known that Plaintiff Conaty would rely upon that information.

99.     Plaintiff Conaty did rely upon the information Butler Consulting provided and, as a result, suffered harm.

100.    Plaintiff Conaty is entitled to recover actual, compensatory and punitive damages from Defendant Calvert & Company with together with pre and post-judgment interest.

**COUNT IX – SUCCESSOR LIABILITY AGAINST URGENT
CARE AMERICA, LLC AS A SUCCESSOR IN INTEREST TO THE LOHMAN GROUP**

101.    The preceding paragraphs are incorporated by reference.

102.    The Board of Directors of MMI entered into a confidential settlement agreement with Defendant Lohman through which MMI agreed to release its claims against her and to not make any negative reference to her past conduct or activity.  The egregious misconduct of Defendant Lohman is at the heart of this claim.  As a result, it would be futile for Plaintiff Conaty to demand that Defendant MMI pursue a claim for breach of contract against Defendant UCA as a successor of Defendant TLG.

28

103.   Upon information and belief, Defendant UCA is a successor by merger to Defendant TLG and Defendant UCA is liable for the bad acts of Defendant TLG as its successor.   On and after April 14, 2009 Defendants UCA and TLG repeatedly and publicly represented, verbally and in writing, that TLG had merged into UCA.

104.   Defendant TLG had a duty to provide the services it promised at the monthly fixed fee identified in its contract with MMI.

105.   Defendant TLG failed to provide the services it promised at the monthly fixed fee identified in its contract with MMI and thereby breached its contract.

106.   Defendant TLG's failure to meet its contractual obligations resulted in MMI suffering substantial lost profits.

107.   Defendant TLG in the course of its practice as a consultant to MMI, provided false information to Plaintiff Conaty upon which he relied in making his investment decision to purchase MMI stock.

108.   Defendant TLG failed to exercise reasonable care or competence in obtaining and/or communicating that information upon which Plaintiff Conaty relied.

109.   As a shareholder, Plaintiff Conaty was one of the intended recipients and beneficiaries of the services and information that Defendant TLG provided and Defendant TLG knew or should have known that Plaintiff Conaty would rely upon that information.

110.   Plaintiff Conaty did rely upon the information Defendant TLG provided and, as a result, suffered harm.

111.   Plaintiff Conaty should be awarded damages from Defendant UCA as Defendant TLG's successor in interest.

29

112.    Plaintiff Conaty is entitled to recover his attorneys' fees and costs for bringing this cause of action from the proceeds recovered by this cause of action.

## COUNT X – <u>NEGLIGENCE</u>

(DEFENDANTS RENEE M. LOHMAN, THE LOHMAN GROUP, MATTHEW D. LEVY, RAVI B. MASIH, JEFFREY A. McCANDLESS, ACUMEN, WILLIAM B. SHEFFEL, THOMAS C. BUTLER AND BUTLER CONSULTING)

113.    The preceding paragraphs are incorporated by reference.

114.    Defendants Levy, Lohman, The Lohman Group, McCandless, Acumen,  Sheffel, Masih, Butler and Butler Consulting owed a duty of care in connection with their solicitation of Plaintiff Conaty for money for the purchase and sale of common stock of MMI to provide truthful and appropriate information, to refrain from providing information that would be inaccurate  or incorrect, and to refrain from negligently and recklessly omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

115.    Defendants have breached the duties they owed to Plaintiff Conaty to provide truthful and appropriate information, to refrain from providing information that would be inaccurate  or incorrect, and to refrain from negligently and recklessly omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

116.    As a direct and proximate result of Defendants' negligence, Plaintiff Conaty has suffered, pecuniary loss for which he is entitled to recover from Defendants Levy, Lohman, the Lohman

Group, McCandless, Accumen,  Sheffel, Masih, Butler and Butler Consulting, jointly and

severally.


**WHEREFORE**, Plaintiff Barry Conaty respectfully requests that this Court enter

judgment in his favor and against Renee M. Lohman, The Lohman Group, Inc., Matthew D.

Levy, M.D., Jeffrey A. McCandless, William B. Sheffel, Thomas C. Butler, Accumen

Accounting, Inc., Butler Consulting Group, Inc., Ravih B. Masih, M.D., Mountain Medical, Inc.,

Mountain Medical PC, PLLC, Urgent Care America (DEL), LLC, and Calvert & Company, P.C.,

jointly and severally, for consequential, compensatory and punitive damages resulting from

conversion and embezzlement, fraud, breach of fiduciary duty, breach of contract, violation of

the West Virginia Uniform Securities Act, and violations of the federal securities laws together

with attorneys fees and costs and pre and post-judgment interest and  award such other and

further relief as this Court deems proper and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**


                                       **BARRY CONATY,**

                                          **By Counsel**

                                 _s/  William E. Ford III_
                                 William E. Ford III
                                 (WV State Bar No.1246)
                                 Attorney for Plaintiff

                                 FORD LAW OFFICE
                                 Goff Building
                                 321 W. Main St., Ste. 600
                                 Clarksburg, WV  26301
                                 (304) 626-3116

                                          31

Fax (304) 626-3300
E-mail: wef@ix.netcom.com